Arnold Levin, Esq. (Pa. Bar No. 02280)
alevin@lfsblaw.com
Laurence S. Berman, Esq. (Pa. Bar No. 26965)
lberman@ lfsblaw.com
Frederick Longer, Esq. (Pa. Bar No. 46653)
flonger@lfsblaw.com
Daniel C. Levin, Esq. (Pa. Bar No. 80013) (*pro hac vice*)
dlevin@lfsblaw.com
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

[Additional Counsel Listed on Signature Page]

Attorneys for Plaintiff
MORTAR AND PESTLE CORP.
d/b/a OLEA RESTAURANT

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORTAR AND PESTLE CORP. d/b/a OLEA RESTAURANT,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>ATAIN SPECIALTY INSURANCE COMPANY a/k/a ATAIN INSURANCE COMPANY,<br><br>　　　Defendant. | Case No.: 3:20-cv-03461-MMC<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mortar and Pestle Corp. d/b/a Olea Restaurant ("Plaintiff" or "Olea Restaurant") brings this Complaint, alleging relief against Defendant Atain Specialty Insurance Company a/k/a Atain Insurance Company ("Defendant" or "Atain") and avers as follows:

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 1 -　　　　Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

## NATURE OF THE CASE

1. This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with Defendant.

2. Plaintiff's insurance policies provide coverage for all non-excluded business losses, and thus provide coverage here.

3. In light of the Plaintiff's inability to safely use or operate its property due to the coronavirus, as well as state and local orders requiring all non-life-sustaining businesses in the State to cease operations and close all physical locations, Plaintiff ceased its regular business operations on March 16, 2020.

4. Due to COVID-19, Plaintiff has suffered "direct physical loss of or damage" to its property. Among other things, COVID-19 made the restaurant premises unusable in the way that it had been used before COVID-19, rendered the property substantially unusable and uninhabitable, intruded upon the property, damaged the property, prevented physical access to and use of the property, and caused a suspension of business operations at the property.

5. Instead of being able to operate a restaurant the location was required to physically alter and drastically reduce operations, and even to close entirely. To do anything else would lead to the emergence or reemergence of COVID-19 at the location. Given the widespread prevalence of COVID-19 in California. even limited use of the restaurant location was not possible for extended periods.

6. This loss is physical. The restaurant was unable to use the interior space in the manner in which it had previously used that space. The high probability of illness and contamination prevents the full physical use of the property.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 2 -      Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

7. Plaintiff's insurance policy provides coverage for all non-excluded business losses, including Business Income that would have otherwise been earned, and thus provides coverage here.

8. The Coronavirus resulted in a global pandemic with state and local orders mandating that all non-essential in-store businesses must shut down.

9. The Coronavirus resulted in the suffering of physical harm and impact and damages occurring both within Plaintiff's restaurant and/or within the immediate area surrounding and outside the restaurant. This caused Plaintiff to significantly reduce the operations of the restaurant.

10. Plaintiff's restaurant derives most of its revenue from in restaurant seating and business, including the service of alcoholic beverages. Plaintiff lost revenue and was closed as a result of the occurrence of the Coronavirus and the Governor of California's Civil Authority Orders.

11. This loss is "direct"—Plaintiff is not asking Defendant to reimburse it after someone obtained a judgment against Plaintiff for getting them sick. That might be an indirect loss. Plaintiff is asking Defendant to pay for their loss of business income occasioned directly by being unable to use the property.

12. This loss is physical. The restaurant is unable to use its interior spaces in the manner in which it had previously used those spaces. The probability of illness prevents the use of the space in no less of a way than, on a rainy day, a crumbling and open roof from the aftermath of a tornado would make the interior space of a business unusable.[1]

---

[1] Plaintiff is seeking coverage for the loss of business income. As an example, that drives home the difference, some law firms have been unable to use their office space because of COVID-19, but nevertheless, because of an ability to work remotely, the law firms' business income may not have been affected, and they thus have faced no loss of business income. A claim by such a law firm for not being able to use its office space would be a "loss of use" claim. The law firm would have no loss of business income claim. Here, Plaintiff's business has decreased because of the impairment of the restaurant and Plaintiff is seeking the loss of business income under the business interruption coverage of the property insurance policy. Here, Plaintiff did not have the option of remote work as a restaurant business involves serving customers on site.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 3 -  Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

13. This loss is a loss. It is the loss of functionality of the space for business purposes. It is the diminishment of the physical space in the buildings. What once could hold many now can safely hold only a few, or none at all.

14. The impairment of the business function is also damage to the restaurant business.

15. Insurers around the country are now wanting federal and state judges to interpret the words "direct physical loss of or damage," but those words need no interpretation. What insurers want is for courts to change the meaning of those terms—instead of just letting a jury apply the facts of the case to these ordinary words and reach a verdict in the same way a jury would reach a verdict if it were called upon to answer whether a person was injured or property was damaged.

16. As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been suffered and sustained, which losses are in an amount greater than $150,000.00.

## **JURISDICTION**

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and Defendant. Further, Plaintiff has suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* § 1332(a).

18. This Court has personal jurisdiction over Defendant. Defendant has engaged in substantial business in this District, including the formation of the Policy underlying Plaintiff's claims, and Defendant has therefore personally availed itself of jurisdiction in this District.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, including the formation of the Policy underlying Plaintiff's claims.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 4 -      Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

## PARTIES

20. Plaintiff owns and operates a restaurant in the State of California. Plaintiff's principal place of business is 1494 California Street, San Francisco, California 94109. Plaintiff is a citizen of California.

21. Defendant Atain is an insurance carrier that provides business interruption insurance to Plaintiff. Defendant is headquartered at 220 Kaufman Financial Center, 30833 Northwestern Highway, Farmington Hills, Michigan 48334. Defendant is a citizen of Michigan.

22. At all relevant times, Defendant issued a policy to Plaintiff to cover business interruption loss from June 30, 2019 until June 30, 2020. The policy number is CIP385317. This policy was intended to cover losses to business interruption. *See* Declaration, attached hereto as Exhibit 1 ("Policy").

23. The Policy is currently in full effect in providing, among other things, personal property, business income and extra expense, contamination coverage and additional coverage.

24. Plaintiff submitted a claim for a date of loss pursuant to its policy seeking coverage under this policy. Defendant rejected Plaintiff's claim for coverage for business loss and business interruption and other claims, contending, *inter alia,* that Plaintiff did not suffer physical damage to its property directly and stating other reasons why Plaintiff purportedly is not entitled to coverage for the losses and damages. Defendant also claimed the policy does not cover losses due to the Virus Exclusion Clause.

## FACTUAL BACKGROUND

### I. Insurance Coverage

25. Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority and for business loss for property damage.

26. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Insured Property is specifically prohibited by order of civil authority as the direct result of a

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 5 -  Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

covered cause of loss to property in the immediate area of Plaintiff's Insured Property. This additional coverage is identified as coverage under "Civil Authority."

27. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means coverage for all covered losses, including but not limited to direct physical loss or direct physical damage, unless the loss is specifically excluded or limited in the Policy.

28. The Policy also covers for damages resulting from business interruption when there is property damage. The exclusion for viruses does not apply to this pandemic. The Policy does identify any exclusions for a pandemic.

29. Based on information and belief, Defendant has accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown and property damage.

30. An all-risk Policy such as that purchased by Plaintiff is one that protects against catastrophic events, such as the one occurring now, involving the global COVID-19 Pandemic that has resulted in the widespread, omnipresent and persistent presence of COVID-19 in and around Plaintiff's Insured Property, including adjacent properties. Coverage under an all-risk Policy is to be broadly interpreted and provided.

31. Plaintiff's all-risk Policy includes coverage for business interruption, which is standard in most all-risk commercial property insurance policies, along with coverage for extended expenses.

32. Plaintiff purchased the Policy expecting to be insured against losses, including, but not limited to, business income losses at the Insured Property.

33. Plaintiff purchased, among other coverages, business interruption coverage for closure by Order of Civil Authority.

34. Based upon information and belief, the Policy provided by Defendant included language that is essentially standardized language adopted from and/or developed by the ISO ("Insurance Service Office"). The ISO, founded in 1971, provides a broad range of services to the property and casualty insurance industry. In addition to form policies, ISO collects and manages databases containing large amounts of statistical, actuarial, underwriting, and claims information,

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 6 -    Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

fraud-identification tools, and other technical services. ISO describes itself as follows: "ISO provides advisory services and information to many insurance companies. … ISO develops and publishes policy language that many insurance companies use as the basis for their products." ISO General Questions, Verisk, https://www.verisk.com/insurance/about/faq/ (last visited June 5, 2020); *see also* Insurance Services Office (ISO), Verisk, https://www.verisk.com/insurance/brands/iso/ (last visited June 5, 2020).

35. The language in the Policy is language that is "adhesionary" in that Plaintiff was not a participant in negotiating or drafting its content and provisions.

36. Plaintiff possessed no leverage or bargaining power to alter or negotiate the terms of the Policy, and more particularly, Plaintiff had no ability to alter, change or modify standardized language derived from the ISO format.

37. Upon information and belief, the "Virus Exclusion" in the Policy was never intended by the ISO nor Defendant to pertain to a situation like the present global Pandemic of the Coronavirus and therefore does not apply to exclude coverage in this matter.

38. Upon information and belief, the Virus Exclusion in the Policy was developed by the ISO in response to the SARS situation that occurred in or around 2005-2006, which was not a Pandemic and not a global Pandemic as is the present COVID-19 Pandemic situation, and therefore was never intended to exclude coverage for a circumstance as presented in this matter.

39. Further, to the extent the Virus Exclusion was permitted by state insurance commissioners or departments, the Virus Exclusion was first permitted due to misleading and fraudulent statements by the ISO that property insurance policies do not and were not intended to cover losses caused by viruses, and so the Virus Exclusion offers mere clarification of existing law. To the contrary, before the ISO made such baseless assertions, courts considered contamination by a virus to be physical damage. Defendant's use of the Virus Exclusion to deny coverage here shows that the Virus Exclusion was fraudulently adopted, adhesionary, and unconscionable and as an attempt to expand the limitations of coverage without proper disclosures. *See* https://www.propertycasualty360.com/2020/04/07/here-we-go-again-virus-exclusion-for-covid-19-and-insurers/ (last visited June 12, 2020).

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

40. Regulatory estoppel applies, and Defendant should not be permitted to rely on the Virus Exclusion because of its conduct and any associated conduct of the ISO to inappropriately obtain the permission of state insurance commissioners or departments to include the language of the Virus Exclusion in its policies.

41. The Virus Exclusion has limited applicability as it is intended to apply only to claims based on personal injury that it causes and not intended to apply to other types of losses that can be associated with an underlying virus such as those claimed by Plaintiff here involving business losses where no personal injury is claimed to have occurred.

42. The Virus Exclusion does not apply for regulatory estoppel reasons alleged above, the physical losses sustained were not personal injury losses, and the losses sustained were not solely because of the virus but rather because of the civil authority orders.

43. Plaintiff is not seeking coverage because of personal injuries caused by the virus but rather property damage.

44. Plaintiff purchased the Policy with an expectation that it was purchasing a Policy that would provide coverage in the event of business interruption and extra expenses, such as that suffered by Plaintiff as a result of COVID-19.

45. At no time had Defendant, or its agents, notified Plaintiff that the coverage that Plaintiff had purchased pursuant to an all-risk Policy that included business interruption coverage, had exclusions and provisions that purportedly undermined the very purpose of the coverage, of providing benefits in the occurrence of business interruption and incurring extended expenses.

46. The purported exclusions of the Policy that Defendant has or is expected to raise in defense of Plaintiff's claim under the Civil Authority coverage of the Policy are contradictory to the provision of Civil Authority Order coverage and violates the public policy of California and other states as a contract of adhesion and hence is not enforceable against Plaintiff.

47. Access to Plaintiff's business was severely limited and/or prohibited by Civil Authority Orders which precluded Plaintiff from operating their Insured Property in the manner intended, for which such insurance was purchased. The Policy provides for coverage for actual loss of business sustained and actual expenses incurred as a covered loss caused by the prohibitions of

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 8 -   Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

the Civil Authority Orders in the area of Plaintiff's Insured Property, which applies to circumstances presented by Plaintiff.

48. The reasonable expectations of Plaintiff, *i.e.*, an objectively reasonable interpretation by the average Policyholder of the coverage that was being provided, was that the business interruption coverage included coverage when a civil authority forced closure of the business for an issue of public safety such as that involving the COVID-19 pandemic in the immediate area surrounding the Insured Properties.

49. The Policy does not exclude the losses suffered by Plaintiff and therefore, the Policy does provide coverage for the losses incurred by Plaintiff.

50. Plaintiff suffered direct loss or damage within the definitions of the Policy as loss of use of property as it was intended to be used, as here, constitutes loss or damage.

51. The virus and bacterium exclusions do not apply because Plaintiff's losses were not solely caused by a virus, bacterium or other microorganism. Instead, Plaintiff's losses were also caused by the entry of Civil Authority Orders to mitigate the spread of COVID-19. The Civil Authority Orders were issued because of damage to individuals and property caused by COVID-19. The Civil Authority Orders were more than mere social distancing enactments but required closure.

52. The Civil Authority Orders prohibited access to Plaintiff's Insured Property. Plaintiff's business was denied access to the general public and was unable to operate its business at due to the Civil Authority stay-at-home orders. The Civil Authority Orders were entered in response to dangerous physical conditions described above resulting from COVID-19.

53. As a result of the presence of COVID-19 and the Civil Authority Orders, Plaintiff lost Business Income and incurred Extra Expense.

54. Based on information and belief, Defendant has accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown from a virus pandemic. Plaintiff made a claim under the Policy, and upon information and belief, Defendant has no intention of paying the claim. Plaintiff submitted a claim for a business loss pursuant to its Policy, seeking coverage under the Policy. Defendant issued a

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 9 -  Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

reservation of rights letter to Plaintiff, wherein, Defendant identified many provisions of the Policy that it purportedly will rely on for determining that coverage for the types of claims that Plaintiff was making would not be covered. Essentially, Defendant's reservation of rights letter implied that there would be a rejection of Plaintiff's business loss and business interruption claims and other claims, contending, *inter alia*, that Plaintiff did not suffer physical damage to its property directly and stating other reasons why Plaintiff is not purportedly entitled to coverage for the losses and damages claimed.

**II.     The Coronavirus Pandemic**

55.     The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the dental practice.

56.     On March 11, 2020, the World Health Organization ("WHO") made the assessment that COVID-19 shall be characterized as a pandemic. *See* https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

57.     The global Coronavirus pandemic[2] is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials.  Human coronaviruses can remain infectious on inanimate surfaces at room temperature for up to 9 days. At a temperature of 30 degrees Celsius (86 degrees F) or more the duration of persistence is shorter. *See* https://www.ncbi.nim.nih.gov/pmc/articles/PMC7132493/ (last visited July 16, 2020).

58.     A particular challenge with the novel coronavirus is that it is possible for a person to be infected with COVID-19 but be asymptomatic. Thus, seemingly healthy people unknowingly spread the virus via speaking, breathing, and touching objects.

---

[2] On March 11, 2020 the World Health Organization ("WHO") made the assessment that COVID-19 shall be characterized as a pandemic. *See* https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 10 -     Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

59. While infected droplets and particles carrying COVID-19 may not be visible to the naked eye, they are physical objects which travel to other objects and cause harm. Habitable surfaces on which COVID-19 has been shown to survive include, but are not limited to, stainless steel, plastic, wood, paper, glass, ceramic, cardboard, and cloth.

60. The virus is thought to spread mainly from person-to-person: between people who are in close contact with one another (within about 6 feet); through respiratory droplets produced when an infected person coughs, sneezes or talks; these droplets can land in the mouths or noses of people who are nearby or possibly be inhaled into the lungs; and some recent studies have suggested that COVID-19 may be spread by people who are not showing symptoms. *See* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

61. The CDC has noted that "[i]t may be possible that a person can get COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, nose, or possibly their eyes, but this is not thought to be the main way the virus spreads." *See* https://www.cdc.gov/foodsafety/newsletter/food-safety-and-Coronavirus.html.

62. The CDC has said that the best way to prevent illness is to avoid being exposed to this virus and that steps can be taken to slow its spread: Maintain good social distance (about 6 feet). This is very important in preventing the spread of COVID-19; Wash your hands often with soap and water. If soap and water are not available, use a hand sanitizer that contains at least 60% alcohol; Routinely clean and disinfect frequently touched surfaces; and Cover your mouth and nose with a cloth face covering when around others.

63. The CDC has noted that the primary and most important mode of transmission for COVID-19 is through close contact from person-to-person. Based on data from lab studies on COVID-19 and what we [the CDC] know about similar respiratory diseases, it may be possible that a person can get COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, nose, or possibly their eyes, but this isn't thought to be the main way the virus spreads. https://www.cdc.gov/media/releases/2020/s0522-cdc-updates-covid-transmission.html (last edited May 23, 2020).

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 11 -  Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

64. Compliance with the CDC recommendations, along with compliance with the Civil Authority Orders, effectively made it impossible for Plaintiff to operate its business in the usual and customary manner causing the business to suffer business losses and added expenses as provided for and covered under the Policy.

65. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

66. A French Court has determined that business interruption coverage applies to the COVID-19 Pandemic. *See* https://www.insurancejournal.com/news/international/2020/05/22/569710.htm.

67. The determination by a Court of another country that coverage exists is consistent with public policy that in the presence of a worldwide Pandemic, such as COVID-19, businesses that possess business interruption insurance coverage should recover their losses from the insurance carriers

68. Similarly, on September 15, 2020, the United Kingdom's High Court found that the 'disease' and/or 'denial of access' clauses in the various insurance policy wordings provide coverage in the circumstances of the COVID-19 pandemic, and that the trigger for coverage caused policyholders' losses. The High Court further noted,

> The fact that a provision in a contract is expressed as an exception does not necessarily mean that it should be approached with a pre-disposition to construe it narrowly. Like any other provision in a contract, words of exception or exemption must be read in the context of the contract as a whole and with due regard for its purpose. As a matter of general principle, it is well established that that if one party, otherwise liable, wishes to exclude or limit his liability to the other party, he must do so in clear words; and that the contract should be given the meaning it would convey to a reasonable person having all the background knowledge which is reasonably available to the person or class of persons to whom the document is addressed.

https://www.fca.org.uk/publication/corporate/bi-insurance-test-case-judgment.pdf.

69. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

70. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

71. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

### III. Civil Authority

72. On March 4, 2020, the State of California declared a State of Emergency for the entire state of California as a result of COVID-19.

73. On March 11, 2020, the State of California set restrictions on large gatherings.

74. On March 16, 2020, the State of California prohibited all gatherings regardless of size. This order effectively shut down all non-essential businesses.

75. On March 17, 2020, the State of California issued a stay at home order that all non-essential workers must stay at home as a result of COVID-19. This order has been extended indefinitely.

76. Plaintiff's restaurant is unable to operate due to the stay-at-home orders for public safety issued by the State of California. Plaintiff has submitted a claim to its insurance carrier related to such losses.

77. Further, on April 10, 2020, President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff.

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***,

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 13 -  Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

> I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid*. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

*See* https://youtu.be/_cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

78. The President is articulating a few core points:

   a. Business interruption is a common type of insurance.

   b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

   c. This pandemic should be covered unless there is a specific exclusion for pandemics.

   d. If insurers deny coverage, they would be acting in bad faith.

79. These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

80. Plaintiff did not have the ability or right to ignore these Civil Authority Orders and proclamations as doing so would expose Plaintiff to fines and sanctions.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 14 -     Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

81. Plaintiff's adherence to the requirements of these Civil Authority Orders and proclamations was in furtherance of the protecting the public, the public's good, supportive of public policy to attempt to minimize the risk of spread of COVID-19 and consistent with it complying with the Civil Authority Orders entered.

### IV. Impact on Plaintiff

82. As a result of the Orders referenced herein, Plaintiff shut its doors to its restaurant.

83. Plaintiff's business loss occurred when the State of California issues its order on March 16, 2020 banning any gatherings at an establishment.

84. Prior to March 16, 2020, Plaintiff was open. Plaintiff's restaurant is not a closed environment, and because people – staff, customers, community members, and others – constantly cycle in and out of the restaurant, there is an ever-present risk that the Insured Property is contaminated and would continue to be contaminated.

85. Businesses like the Plaintiff's restaurant are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain viable for far longer as compared to a facility with open-air ventilation.

86. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to the property and to one another and because the nature of the restaurant and activity exposes to high level of respiratory droplets and fomites being released into the air of the property.

87. The virus is physically impacting Plaintiff. Any effort by Defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger Plaintiff and the public.

88. Because of the nature of COVID-19 as described above, relating to its persistence in locations and the prospect of causing asymptomatic responses in some people, the risk of infection to persons is not only high, but could cause persons with asymptomatic responses to then come into contact with others who would not be so fortunate as to suffer merely an asymptomatic response, and instead suffer serious illness.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 15 -    Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

89. The Civil Authority Orders entered by the state and local government were in the exercise of authority to protect the public and minimize the risk of spread of disease.

90. Even with the entry of these Civil Authority Orders there remained physical impact not only in and within Plaintiff's business property but in and around the surrounding location of Plaintiff's business property in light of COVID-19 presence not being detectable other than through microscopic means, and occurrence of illness.

91. The entry of the Civil Authority Orders to mitigate health risks to the public by attempting to prevent COVID-19 contamination, through the closing businesses and ordering persons to stay at home resulted in a physical impact on Plaintiff's business and Insured Property.

92. Plaintiff specifically sought coverage for business interruption losses and extended expenses and paid premiums for such coverage and with an expectation that the Policy Plaintiff purchased provided such coverage, with no disclosures to the contrary being made to Plaintiff by Defendant or its agents.

93. Plaintiff had no choice but to comply with the Civil Authority Orders, for failure to do so would have exposed Plaintiff to fines and sanctions. Plaintiff's compliance with mandates resulted in Plaintiff suffering business losses, business interruption and extended expenses of the nature that the Policy covers and for which Plaintiff's reasonable expectation was that coverage existed in exchange for the premiums paid. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

94. A declaratory judgment determining that the coverage provided under the Policy exists and is necessary so as to prevent Plaintiff from being left without vital coverage acquired to ensure the survival of the trucking school due to the shutdown caused by the civil authorities' response. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

95. Plaintiff has served discovery on Defendant and the California Department of Insurance. Plaintiff's counsel has similarly in another case served discovery on the ISO related to

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 16 - Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

the scope and validity of the Virus Exclusion, but the ISO has indicated that responding to the subpoena would be delayed due to the ongoing COVID-19 Pandemic. See Exhibits 2, 3, 4.

## CAUSE OF ACTION

## DECLARATORY RELIEF

96. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

97. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

98. An actual controversy has arisen between Plaintiff and Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

   a. The Orders constitute a prohibition of access to Plaintiff's Insured Property;

   b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

   c. The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here. These exclusions do not apply to the pandemic;

   d. The Orders trigger coverage;

   e. The Policy provides coverage to Plaintiff for any current and future civil authority closures of business in California due to physical loss\or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters. The policy does not exclude the pandemic;

   f. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Property; and

   g. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 17 -    Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

99. Plaintiff seeks a Declaratory Judgement to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property as Civil Authority as defined in the Policy.

100. Plaintiff further seeks a Declaratory Judgement to affirm that the Order triggers coverage.

101. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in the State of California due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays as follows:

a. For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Property.

b. For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

c. For a declaration that the Orders trigger coverage under the Policy.

d. For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of businesses in California due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

e. For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

f. For a declaration that Defendant's denial of coverage for losses sustained that were caused by the entry of the Civil Authority Orders referenced, and Plaintiff's adherence to the Civil Authority Orders violates public policy.

g. For a declaration that under the circumstances of this Pandemic and the entry of the Civil Authority Orders referenced, Plaintiff had no choice but to comply with the Civil Authority Orders, and that Plaintiff's compliance resulted in Plaintiff suffering business losses, business interruption and extended expenses which is therefore a covered expense.

h. For such other relief as the Court may deem proper.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 18 -    Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT

# TRIAL BY JURY IS DEMANDED

Plaintiff hereby demands trial by jury.

DATED: October 23, 2020

Respectfully submitted,

**LEVIN SEDRAN & BERMAN LLP**

By:/s/ *Daniel C. Levin*
DANIEL C. LEVIN, ESQUIRE

Daniel C. Levin, Esq. (Pa. Bar No.80013) (*pro hac vice*)
dlevin@lfsblaw.com
Arnold Levin, Esq. (Pa. Bar No. 02280)
alevin@lfsblaw.com
Laurence Berman, Esq. (Pa. Bar No. 26965)
lberman@lfsblaw.com
Frederick Longer, Esq. (Pa. Bar No. 46653)
flonger@lfsblaw.com
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

David M. Birka-White (State Bar No. 85721)
dbw@birka-white.com
**BIRKA-WHITE LAW OFFICES**
178 E. Prospect Avenue
Danville, CA 94526
Telephone: (925) 362-9999
Facsimile: (925) 362-9970

Richard M. Golomb, Esq. (PA Bar No: 42845)
rgolomb@golombhonik.com
Kenneth J. Grunfeld, Esq. (PA Bar No: 84121)
kgrunfeld@golombhonik.com
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 19 -                Case No. 3:20-cv-03461-MMC
FIRST AMENDED COMPLAINT

Aaron Rihn, Esq. (PA Bar No: 85752)
arihn@peircelaw.com
**ROBERT PEIRCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229

W. Daniel "Dee" Miles, III (Ala. Bar ID:7656M75W)
Dee.Miles@BeasleyAllen.com
Rachel N. Boyd (Ala. Bar ID: 6320342)
Rachel.Boyd@BeasleyAllen.com
Paul W. Evans (AL Bar ID: 9270Z18F)
PaulEvans@BeasleyAllen.com
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Counsel for Plaintiff*

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 20 -     Case No. 3:20-cv-03461-MMC

FIRST AMENDED COMPLAINT