IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORTAR AND PESTLE CORP., <br><br> Plaintiff, <br><br> v. <br><br> ATAIN SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | Case No. 20-cv-03461-MMC <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DISMISSING FIRST AMENDED COMPLAINT WITH PREJUDICE** |

Before the Court is Atain Specialty Insurance Company's ("Atain") Motion, filed November 6, 2020, "to Dismiss Plaintiff's First Amended Complaint." Plaintiff Mortar and Pestle Corp. d/b/a Olea Restaurant ("Mortar and Pestle") has filed opposition, to which Atain has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

The instant action arises in the context of the COVID-19 pandemic and the significant impact the pandemic has had on business operations nationwide. Mortar and Pestle, which owns and operates a restaurant in San Francisco (see id. ¶ 20), alleges that, "[i]n light of [its] inability to safely use or operate its property due to the coronavirus, as well as state and local orders requiring all non-life-sustaining businesses in the State to cease operations and close all physical locations, [it] ceased its regular business operations on March 16, 2020" (see id. ¶ 3), and, based thereon, "submitted a claim for a business loss pursuant to its" insurance policy ("Policy") issued by Atain (see id. ¶ 54).

---

[1] By order filed December 7, 2020, the Court took the matter under submission.

The Policy provides "Property Coverage" as follows:

> We will pay for <u>direct physical loss of or damage to</u> Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(<u>See</u> FAC Ex. 1 (Policy) at 27 (emphasis added).)[2]

In addition, the Policy provides "Business Income (and Extra Expense) Coverage" as follows:

> 1. Business Income
>
> . . .
>
> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration."[3] The "suspension" must be caused by <u>direct physical loss of or damage to</u> property at premises which are described in the Declarations . . . . The loss or damage must be caused by or result from a Covered Cause of Loss.
>
> . . .
>
> 2. Extra Expense
>
>     a. Extra Expense coverage is provided at the premises described in the Declarations . . . .
>     b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no <u>direct physical loss or damage to</u> property caused by or resulting from a Covered Cause of Loss.
>
> . . .
>
> 5. Additional Coverages
>
>     a. Civil Authority
>
>     We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to <u>direct physical loss of</u>

---

[2] The page numbers for the Policy, which is attached as Exhibit 1 to both the initial Complaint and the FAC, are those affixed to the top of each page by this district's electronic filing program.

[3] The Policy defines "period of restoration" as the period of time that begins "72 hours after the time of direct physical loss or damage for Business Income coverage" or "[i]mmediately after the time of direct physical loss or damage for Extra Expense coverage," and ends on the earlier of "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "[t]he date when business is resumed at a new permanent location." (<u>See</u> FAC Ex. 1 at 48.)

> or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

(See FAC Ex. 1 at 41-42 (emphasis added).)

The Policy also includes an exclusion titled "Exclusion – Fungi, Spores, Bacteria, or Viruses," which provides as follows:

> This insurance does not apply to any claim, suit, loss or damage(s) resulting from, caused directly or indirectly, proximately or remotely by, occasioned by, contributed or attributed to, or in any way related in whole or in part to any:
>
> a. "Fungus(i)", "spore(s)", bacteria or virus(es), whether alive or not.
> b. Substance, toxin, allergen, irritant, vapor or gas, produced by or arising out of any "fungus(i)", "spore(s)", bacteria or virus(es), whether alive or not;
> c. Material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "spore(s)", bacteria or virus(es), whether alive or not;
> d. Cost or expenses associated in any way, with the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal or any obligation to investigate or assess the presence or effects of any "fungus(i)", "spore(s)", bacteria or virus(es) or any substance, toxin, allergen, irritant, vapor or gas produced by or arising out of any "fungus(i)" or "spore(s)", bacteria or virus(es), whether alive or not.

(See FAC Ex. 1 at 25.)

Mortar and Pestle alleges Atain, in response to the above-referenced claim, "issued a reservation of rights letter," in which Atain "implied that there would be a rejection of [Mortar and Pestle's] business loss and business interruption claims and other claims" (see FAC ¶ 54), and "contend[ed], *inter alia*, that [Mortar and Pestle] did not suffer physical damage to its property directly." (See id.)

Based on the foregoing allegations, Mortar and Pestle asserts a single cause of action, titled, "Declaratory Relief."

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v.

1  Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a
2  complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual
3  allegations."  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his
4  entitlement to relief requires more than labels and conclusions, and a formulaic recitation
5  of the elements of a cause of action will not do."  See id. (internal quotation, citation, and
6  alteration omitted).
7        In analyzing a motion to dismiss, a district court must accept as true all material
8  allegations in the complaint and construe them in the light most favorable to the
9  nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To
10 survive a motion to dismiss, a complaint must contain sufficient factual material, accepted
11 as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.
12 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be
13 enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.
14 Courts "are not bound to accept as true a legal conclusion couched as a factual
15 allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

17       In the initial Complaint, Mortar and Pestle asserted, as it does in the FAC, a single
18 claim for declaratory relief based on the above-described denial of coverage.  By order
19 filed September 11, 2020, the Court, finding Mortar and Pestle had failed to plausibly
20 allege a covered loss under the Policy, dismissed the initial Complaint and afforded
21 Mortar and Pestle leave to amend.  By the instant motion, Atain argues Mortar and Pestle
22 has again failed to plausibly allege a covered loss under the Policy.

23 **A.**    **Property Coverage, Business Income, and Extra Expense Provisions**

24       As set forth above, the Property Coverage, Business Income, and Extra Expense
25 provisions all require, for coverage thereunder, "direct physical loss of or damage to" the
26 insured's property.  (See FAC Ex. 1 at 27, 41.)  Atain argues Mortar and Pestle still fails
27 to allege sufficient facts demonstrating such loss or damage.
28

In resolving the instant dispute, the Court applies California law.[4] See Stanford Univ. Hosp. v. Fed. Ins. Co., 174 F.3d 1077, 1083 (9th Cir. 1999). Under California law, "interpretation of an insurance policy is a question of law." See Waller v. Truck Ins. Exch., 11 Cal. 4th 1, 18 (1995). "Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them." Reserve Ins. Co. v. Pisciotta, 30 Cal. 3d 800, 807 (1982) (noting "[c]ourts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists").

Here, Mortar and Pestle argues, "physical alteration to the structure of the property" is not required to establish "direct physical loss of or damage to" property, and the "mere loss of use of tangible property that is not physically injured" is sufficient. (See Opp. at 4:14-16 (internal quotation, citation, and emphasis omitted).) As discussed below, the Court is not persuaded.

The California Court of Appeal has interpreted "direct physical loss" to require a "distinct, demonstrable, physical alteration of the property" or a "physical change in the condition of the property." See MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co., 187 Cal. App. 4th 766, 771, 779-80 (2010) (internal quotations and citations omitted) (construing insurance policy providing coverage for "direct physical loss to business personal property").[5]

In light thereof, "a detrimental economic impact," such as loss of use, "unaccompanied by a distinct, demonstrable, physical alteration of the property," is insufficient. See MRI, 187 Cal. App. 4th at 779; see also 10E, LLC v. Travelers

---

[4] There is no dispute that California law governs the policy here at issue.

[5] As noted, the policy in MRI covered "direct physical loss to" property, rather than "direct physical loss of" property, the phrase used in the policy here at issue. Even assuming the use of a different preposition can be deemed to expand the meaning of the policy language, however, the "loss" must still be "physical." See Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am., No. CV 17-04908 AB (KSx), 2018 WL 3829767, at *1, *4 (C.D. Cal. July 11, 2018) (finding, where insured cargo was erroneously sent to China and not capable of being returned, such "permanent dispossession" of physical property came within definition of "direct physical loss of" property).

5

Indemnity Co. of Conn., No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653, at *5 (C.D. Cal. Sept. 2, 2020) (finding, where policy provided coverage for "direct physical loss of or damage to" property, "[a]n insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage"); W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos., No. 20-cv-05663-VAP-DFMx, 2020 WL 6440037, at *4 (C.D. Cal. Oct. 27, 2020) (rejecting plaintiffs' contention "that the loss of use of their properties is sufficient to trigger coverage" where policy provided coverage for "direct physical loss of or damage to" property; finding "detrimental economic impact alone . . . is not compensable under a property insurance contract" (internal quotation, citation, and emphasis omitted)).[6]

Additionally, as Atain points out, the Policy expressly provides that "loss of use" is not covered. (See FAC Ex. at 52 ("We will not pay for loss or damage caused by or resulting from . . . loss of use.")); see also Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., No. 20-CV-03213-JST, 2020 WL 5525171, at *6 (N.D. Cal. Sept. 14, 2020) (finding policy provision stating insurer "'will not pay for loss or damage caused by or resulting from . . . loss of use' . . . suggests that the 'direct physical loss of . . . property' clause was not intended to encompass a loss where the property was rendered unusable without an intervening physical force" (alterations in original) (citation omitted)).[7]

Next, Mortar and Pestle argues that, in any event, it has plausibly alleged COVID-19 caused "direct physical loss of or damage to" its restaurant. Mortar and Pestle has failed, however, to add any allegations sufficient to show COVID-19 has caused a

---

[6] To the extent Mortar and Pestle alternatively argues "direct physical loss of or damage to" property is ambiguous, such argument is unavailing, see Lockheed Martin Corp. v. Cont'l Ins. Co., 134 Cal. App. 4th 187, 197 (2005) (holding, "if a term in an insurance policy," when used in an "analogous" context, "has been judicially construed, it is not ambiguous" (internal quotation and citation omitted)), and to the extent Mortar and Pestle relies on cases holding loss of use alone suffices, the Court finds more persuasive the authorities cited herein finding to the contrary.

[7] Mortar and Pestle's reliance on the definition of "property damage" in the Policy's Commercial General Liability Coverage Form (see FAC Ex. 1 at 96), is misplaced, as that definition applies solely to coverage for third-party liability claims (see id. at 110).

"distinct, demonstrable, physical alteration" of the restaurant or a "physical change in [its] condition." See MRI, 187 Cal. App. 4th at 779-80 (internal quotation, citation, and emphasis omitted). Although Mortar and Pestle has added allegations such as COVID-19 has "intruded upon the property" and "damaged the property" (see FAC ¶ 4), those conclusory assertions are insufficient to state a claim based thereon, see Iqbal, 556 U.S. at 678; see also W. Coast Hotel Mgmt., LLC, 2020 WL 6440037, at *4 ("disregard[ing] . . . conclusory allegation" that "there was direct physical loss of or damage to the [insured properties]" (internal quotation and citation omitted)), and particularly given allegations elsewhere in the FAC indicating Mortar and Pestle is seeking loss of income caused by a risk of contagion, rather than loss of property caused by the physical presence of COVID-19 (see FAC ¶ 6 (alleging "[t]he high probability of illness and contamination prevents the full physical use of the property"); see also Opp. at 12:27-28 (arguing Mortar and Pestle "alleges that its insured property lost its functionality by the continued risk of being contaminated")).

   Moreover, even assuming Mortar and Pestle had alleged COVID-19 has been, at some point, physically present in the restaurant, "the presence of the virus itself, or of individuals infected with the virus, at [Mortar and Pestle's] business premises or elsewhere [does] not constitute direct physical loss of or damage to property." See Pappy's Barber Shops, Inc. v. Farmers Grp., Inc., No. 20-CV-907-CAB-BLM, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020). Indeed, as Mortar and Pestle alleges, any contaminated surfaces can be disinfected and cleaned (see Opp. at 12:27-13:2 (stating spread of COVID-19 can be prevented by "constant sanitation and cleaning")), thereby acknowledging that COVID-19 does not cause "physical alteration" or "physical change in the condition" of property, see MRI, 187 Cal. App. 4th at 779-80 (internal quotation, citation, and emphasis omitted); see also Uncork & Create LLC v. Cincinnati Ins. Co., No. 20-cv-00401, 2020 U.S. Dist. LEXIS 204152, *13 (S.D.W. Va. Nov. 2, 2020) (finding, "even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property"; noting, "[b]ecause routine cleaning . . .

7

eliminates the virus on surfaces, there would be nothing for an insurer to cover"); Mama Jo's, Inc. v. Sparta Ins. Co., No. 17-cv-23362-KMM, 2018 U.S. Dist. LEXIS 201852, at *3, *21-22, *24-25 (S.D. Fla. June 11, 2018) (holding presence of construction debris in restaurant did not constitute "direct physical loss of or damage to" property; finding, "[t]he fact that the restaurant needed to be cleaned more frequently does not mean Plaintiff suffered a direct physical loss or damage").

Accordingly, the Court finds Mortar and Pestle has failed to plausibly allege coverage under the Property Coverage, Business Income, and Extra Expense provisions.

**B.  Civil Authority Provision**

As set forth above, the Civil Authority provision provides coverage for losses caused "by action of civil authority that prohibits access to" the insured property "due to direct physical loss of or damage to property[] other than at the described premises." (See FAC Ex. 1 at 42.)

In reliance thereon, Mortar and Pestle asserts that "COVID-19 caused damage to occur in and around the location of the [restaurant] and California issued the Orders as a direct result of that damage."  (See Opp. at 14:12-15.)  As with the Property Coverage, Business Income, and Extra Expense provisions, however, the Civil Authority provision requires "direct physical loss of or damage to" property, and Mortar and Pestle, for the same reasons as set forth above with respect to the covered premises, has failed to plausibly allege such loss or damage with respect to any other property.

Further, it is apparent from the plain language of the cited civil authority orders that such directives were issued to stop the spread of COVID-19 and not as a result of any physical loss of or damage to property.  (See Def.'s Req. for Judicial Notice, filed Nov. 6, 2020, Ex. D (Governor's "Executive Order" dated March 19, 2020) at 43 ("This Order is being issued to protect the public health of Californians. . . . [;] we want to bend the curve, and disrupt the spread of the virus");[8] see also FAC ¶ 89 (alleging the "Civil Authority

---

[8] Atain's unopposed request that the Court take judicial notice of the above-

8

Orders . . . were in the exercise of authority to protect the public and minimize the risk of spread of disease").)

Accordingly, the Court finds Mortar and Pestle has failed to plausibly allege coverage under the Civil Authority provision.

## C.  Virus Exclusion

Even assuming, arguendo, Mortar and Pestle has sufficiently alleged its claimed losses otherwise would be covered under one or more of the above provisions, any such coverage is expressly excluded under the "Exclusion – Fungi, Spores, Bacteria, or Viruses" provision.

At the outset, the Court notes it is undisputed that COVID-19 is a virus (see, e.g., FAC ¶¶ 55, 57-58, 60 (describing COVID-19 as a "virus")), and, to the extent Mortar and Pestle argues the Exclusion is "subject to more than one reasonable interpretation" (see Opp. at 19:3-4) and that such ambiguity must be resolved in favor of the insured, specifically, Mortar and Pestle's interpretation that the Exclusion only applies to "viruses associated with fungi and bacteria, not COVID-19" (see id. at 18:5-7), the Court is not persuaded.

First, the case on which Mortar and Pestle relies in support of such argument is distinguishable, both as to the language of the exclusion there at issue and the circumstances under which the court was asked to construe it.  See Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., No. 20-cv-01174, 2020 WL 5939172, at *4 (M.D. Fla. Sept. 24, 2020) (finding ambiguity where policy excluded coverage for damage caused by "[p]resence, growth, proliferation, spread, or any activity of fungi, wet rot, dry rot, bacteria or virus"; finding further ambiguity based on parties' failure to submit all relevant policy forms where policy containing exclusion "d[id] not exist as an independent document"); see also Founder Inst. Inc. v. Hartford Fire Ins. Co., No. 20-CV-04466-VC, 2020 WL 6268539, at *1 (N.D. Cal. Oct. 22, 2020) (finding claim excluded under policy

referenced Executive Order is hereby GRANTED.  See Fed. R. Evid. 201(b).

using same language as exclusion in Urogynecology; noting court in Urogynecology "did not cite anything . . . that would support a conclusion that a business shutdown due to a pandemic falls outside the scope of the virus exclusion").

Second, as noted, the Court must interpret policy language "according to [its] plain meaning." See Reserve, 30 Cal. 3d at 807. Here, given the plain meaning of the Exclusion, which lists, in the disjunctive, four independent bases for exclusion, one of which is "virus(es)," the Court finds coverage for losses caused directly or indirectly by COVID-19 is expressly excluded.

Lastly, to the extent Mortar and Pestle seeks leave to conduct discovery to determine whether the Exclusion can be given a meaning other than its facially plain meaning, such request is denied. In particular, Mortar and Pestle has not shown how discovery as to statements made to "insurance regulators" (see Opp. at 24:19-20) by the Insurance Services Office ("ISO")[9] about the ISO form virus exclusion is relevant, given that, as Mortar and Pestle itself acknowledges, the ISO form exclusion is markedly different than that at issue here (see id. at 16:27-17:4 (distinguishing cases finding no coverage where policy contained ISO form exclusion)), nor has Mortar and Pestle offered anything more than speculation as to whether Atain made any statements to regulators regarding the Exclusion.

Accordingly, the Court finds the Exclusion applies and, for such additional reason, finds Mortar and Pestle has failed to plausibly allege coverage under the Policy.

Consequently, given such finding as well as the findings previously discussed herein regarding the coverage provisions, the Court, although sympathetic to Mortar and Pestle's difficult circumstances amidst the ongoing pandemic, finds the FAC is subject to dismissal and, given Mortar and Pestle's failure to cure the previously identified deficiencies in its initial Complaint, such dismissal will be without further leave to amend.

---

[9] The ISO "develops and publishes policy language that many insurance companies use as the basis for their products." (See FAC ¶ 34 (internal quotation and citation omitted).)

10

**CONCLUSION**

For the reasons stated above, the Motion to Dismiss is hereby GRANTED, and the instant action is hereby DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: December 21, 2020

MAXINE M. CHESNEY
United States District Judge